BATES MACH. CO. v. WETTER NUMBERING MACH. CO.

(Circuit Court, E. D. New York. April 12, 1905.)

PATENTS—INVENTION—NUMBERING MACHINES.

The Bates patent, No. 676,084, for an automatic typographic numbering machine, claim 27, which covers a box or case for such machine, in which the side plates are interchangeable, and held in place entirely by pins instead of screws, as in the prior art, rendering them easy to remove and replace, was not anticipated, and shows invention. Also *held* infringed.

In Equity. On final hearing.

Alfred B. Carhart, for complainant.

Redding, Kiddle & Greeley, William B. Greeley, and William A. Redding, for defendant.

THOMAS, District Judge. The bill is filed to enjoin defendant's infringement of claim 27 of letters patent No. 676,084, issued June 11, 1901, to Edwin G. Bates, assignor of the complainant, pursuant to an application filed August 4, 1900. Claim 27 is as follows:

"(27) In an automatic typographic numbering-machine, adapted to be set up with type in a form, the combination of frame, 1, with smooth holes, 25, therein, a nonrotary axis supported by said frame, number-wheels on the axis, and loose wheel-protecting side plates, 23, having projecting pins, 24, fixed to said plates, and adapted to easily enter and move from said holes, while remaining fixed rigidly to the plates, whereby said plates, when not surrounded by type matter, are easily removed."

If the patent is valid, the defendant infringes. The defendant's defense is summarized by its counsel as follows:

"(1) The substance of the alleged invention covered by the claim in suit is a box with one side pinned on, instead of held on by screws, and that, if the box is to be regarded as the casing of a typographic numbering machine, it is immaterial, so far as the substance of the claim is concerned, what the precise nature of the numbering machine supported and protected by such box may be.

"(2) In view of the common and everyday use of smooth pins and holes to hold one part in position with relation to another, it could not have amounted to invention to employ such means in the casing of a numbering machine.

"(3) The use of pinned side plates in the printer's art, in electrotype blocks, as shown in the prior patents cited, and in numbering machines, as shown in the Bates Manufacturing Company numbering machine and in the Turlot numbering machine—the identical machines with removable side plates held by screws being old—Bates made no contribution to the world's knowledge.

"(4) The supposed invention was anticipated in the Bates Manufacturing Company's numbering machine and in the Turlot numbering machine."

The third and fourth of defendant's statements may be considered together. The defendant refers to letters patent issued to Gleeson April 28, 1885, pursuant to application filed February 12, 1884, which relates to an electrotype block for mounting electrotype or stereotype plates. The letters and diagrams show a plate placed on a box, and means for holding it in place by clamps having claws which clasp the beveled edges of the plate, and inner tongues fitting into grooves cut into the sides of the box. The specification states:

"In place of the tongue, f, and groove, g, pins, j, fixed to the plates, c, e, and fitting into corresponding holes in the binders, h, or block, b, may be used;

or said pins may be fastened to the block or binders; or any equivalent device may be used which will hold the plates or frame, c, e, securely to the binders, h, or block, b, so that they cannot work upward when locked in the chase, and so as to cause said plates, c, e, to assume their proper place automatically as the form is locked."

It is considered that this reference does not disclose the complainant's structure, for the following reasons:

(1) The clamps or side pieces are in part held in place by claws at the upper edges thereof.

(2) The clamps are merely to hold in place an electrotype plate overlying the upper surface of the block.

(3) The clamps do not take the place of the side plates in suit, because such side plates are the sides of the box in which the machinery to be actuated and used for printing is placed, while Gleeson uses independent sides or binders for his box, to which the clamps are attached, and such clamps merely prevent movement of the electrotype plate superimposed on the surface of the box. Bates uses the side plates to protect parts that are actuated, while Gleeson holds in place an inert plate. Gleeson wished to hold down on a box a plate for printing. Bates wished to make a box whose interchangeable sides were easily dismembered and replaced, wherein should be supported and protected a numbering machine. Gleeson wished to hold in place and protect a printing plate supported on a box. Undoubtedly Gleeson's pins helped the claws to hold in place and protect the plate. There the similarity of the devices ends.

The Sheldon letters of October 4, 1892, show bolts and nuts, and fingers with bent ends. The Burke letters show sections of printers' blocks held together by pins, like table leaves. The Fietsch letters show a block for holding electrotype plates on its surface by stop pins placed along, but not through, the edges of the plate, and passing into holes in the block. None of these patents suggest the complainant's structure, the side plates thereof, or the uses made of the pins. The Sauer patent shows removable side plates, but nothing more.

This brings the inquiry to the "Bates Manufacturing Company numbering machine," of the plungerless variety, which is one of a lot manufactured in 1891 and 1892 by the Edison Phonograph Works. It has two side plates facing the number wheels, and held to the frame by screws, and two end plates which are located at the ends of the frame, one of which is held by screws to the frame, while the other, like "Defendant's Exhibit Loose Plate," is held to the frame by two screws, and by two pins that engage holes in the frame. As complainant states, the end piece was supplied with pins, in addition to screws, to locate more accurately the end piece as a working bearing for the main lever, but the screws were also used. It seems that neither the pins nor screws alone would have been sufficient. The defendant refers to the Turlot numbering machine, brought to this country as early as 1890, 1891, or 1892 by Joseph Wetter & Co., the defendant's predecessor in business. Wenz and Bartusch, for the defendant, and Sander, for

the complainant, give evidence respecting this structure, all in defendant's employ at the time. Sander has been in complainant's employment since 1903. The machine is a typographic numbering machine, of the plungerless kind, having number wheels mounted on a nonrotary shaft, and capable of vertical movement, all mounted in a frame. The shaft is supported at either end in a frame. On one side is a brass plate, which is fastened to the frame by two screws at either end; and in the center of such plate is a pin, which does not engage any part of the frame, but is understood to constitute a fulcrum for a lever used in connection with the operating mechanism. Outside this brass plate is another plate, attached to the plates at the ends of the frame by a dowel pin at each side, and also by screws. On the other side of the machine is a plate, held by a central pin at each end, and by a larger pin near the center, that enters into a lever connected with the actuating machinery. This plate is also held to the frame by screws. This side plate protects the shaft and wheels, there being between the plate and the wheels simply the lever just mentioned. At each end of the brass frame there is a plate attached to the outer side plates by screws passing through the latter, and each end plate has along its upper and lower ends claws that clasp this frame. At each end are also clips, which act as clamps upon the side pieces, and in each of them are two screw holes, evidently intended for screws, whereby they are fastened to the underlying end plate. Bartusch testified that this machine came to the Wetter Co. from France, and that he saw it in 1891 or 1892, when it was shown to him by Mr. Geary, who had charge of the Wetter factory. He testifies to two holes in each of the outer end pieces, and then:

"XQ. 27. Near the top of one of these side plates I find two small screw holes. Do you remember what was attached? A. There was a little projected piece that I guess was come in contact with that lever there. XQ. 28. Do you remember ever seeing that piece? A. I seen the piece there, certainly. It was, as far as I can remember, a thirty-second or a sixteenth of an inch thick. XQ. 29. Have you any knowledge of what has become of that piece? A. No. XQ. 30. Do you know exactly what function that piece which is lost performed? A. I cannot state anything positive about it. XQ. 31. Is there fixed to the inside of the side plate a large pin which forms a bearing for the lever actuating the forward movement of the number wheel? A. Yes. Otherwise the machine would not work. XQ. 32. In order that the machine should operate properly, is it necessary that the side plate should be fixed firmly with relation to the other parts of the mechanism, to afford that bearing for the lever? A. As far as the machine got to do some work, it has got to be locked up in form, and needs no screw at all. XQ. 33. Is it your opinion that the machine was intended to be used with screws in the holes which are provided in the side plates? A. Well, I guess so; the people who made it furnished it this way, and left it to the customer to leave the screws out if they wanted to. That happens every day in every typographic machine."

According to his evidence, the machine was kept in the safe. No other machines with side plates and pins were made while he was with Wetter & Co., nor was the question of side plates with pins discussed with him.

William Wenz was at that time in the employ of Wetter & Co., and during his continuance with them had charge of shipments, finally became a salesman, and later general manager. He testified

to the machine in its present condition, so far as pins were concerned, although he supposed that "the screws in the side plate, as well as a small check, are missing," and that the clips were applied to the ends of the machine to keep it from being locked overtight in the form; that the machine could be used with one plate, but, on account of its peculiar construction, the second plate is a part of the working mechanism.

Sander was with the Wetter Co. from 1888 to 1896, then absent eight months, and then from 1897 to 1903, and since has been with the complainant company. With Wetter & Co. he had charge of manufacturing machines. He states that he first saw the Turlot machine in 1890; that the side plates had screws in them, but does not remember whether either of the side plates had pins. On cross-examination he was asked:

"XQ. 101. Are you prepared to say that this Defendant's Exhibit Turlot Numbering Machine did not have pins in its side plates when you first saw it? A. No, sir; I can't say that."

From the evidence of these witnesses it must be concluded that Wetter & Co. did receive as early as 1892 the Turlot machine, and that its condition was the same as now presented, except as to the screws and the other part above mentioned, which are now absent. It is understood, however, that the side plate, lying directly against the frame, carried a part that had to do with the working mechanism, and in that case it seems that such side could not be used without being attached to the frame by screws. The other side is not the outer protection for the wheels, there being an intermediate plate, although there is a pin at either end. But such plate was evidently intended to be held in place by four screws. If any person should dismember this machine, he would at once discover the inconvenience of plates attached by screws, and would hold in higher estimate a machine capable of being used with side plates located and held in position by the pins alone, thereby allowing such plates to be quickly removed and interchangeably used. While this machine, as well as the earlier Bates machine, which has been discussed, have side plates with pins firmly attached by screws, yet it is concluded that the present Bates machine, as regards the use of side plates with pins alone, is much more useful and valuable; and the only question is whether the elimination of screws, and such use of pins alone, constitutes invention. The matter is so simple that there is a temptation to conclude that the mere elimination of the screws, leaving the pins to perform the entire function of fixing the position of the plates, and attaching them to the frame, does not show invention. But on the other hand, such arrangement appears to be highly useful, and it is concluded that it involves some invention. By dropping out the several screws there is a saving of expense and labor in the construction and maintenance of the machine, in the dismemberment of the parts for the purpose of cleaning, and the interchangeability of the sides is an advantage.

The first statement of the defendant above quoted—that "it is immaterial, so far as the substance of the claim is concerned, what

the precise nature of the numbering machine supported and protected by such box may be"—may be true, in a comparison of the present Bates machine with the Turlot machine and the earlier Bates machine. In other words, it is not understood how the difference in the mechanism of the machines is important in the determination of the question at issue, except that in the Turlot machine, as already stated, one side was to carry and support a part that engaged the working parts, and the other side was merely an outside plate, with an intermediate plate attached to the box, and immediately protecting the working parts. It is concluded that the elimination of screws, and the use of pins, only, for the purpose of holding plates, having an immediate relation to the working parts, whereby the pins perform the whole duty and function, is a sufficient advance in the art to sustain the patent. The familiar plea that a competent mechanic could have effected this end does not dispose of the fact that no competent mechanic had done it or had thought of doing it, and that Bates, by a machine embodying such conception, did something that was practically of very considerable benefit.

Pursuant to these views, the complainant should have a decree.